IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| BANK OF AMERICA, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:12-cv-00167 |
| | ) | Senior Judge Haynes |
| v. | ) | |
| | ) | |
| SOUTHEASTERN BUILDING | ) | |
| CORPORATION, KENNESAW FARMS | ) | |
| DEVELOPMENT, INC., KENNESAW | ) | |
| FARMS INVESTMENT PARTNERS, | ) | |
| LUCKEY-WHEELER PROPERTIES and | ) | |
| THOROUGHBRED INVESTMENT | ) | |
| PARTNERS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Before the Court is the Defendant, Southeastern Building Corporation's ("SBC") motion for summary judgment (Docket Entry No. 151), contending that Defendant SBC is entitled to reimbursement from Plaintiff in the amount of sixty-eight thousand four hundred ninety-four dollars forty-seven cents ($68,494.47) under both the terms of the Forbearance Agreement between the parties and the doctrine of equitable subrogation.

Plaintiff has filed its response in opposition (Docket Entry No. 159), contending that Section 9(b) of the Forbearance Agreement between Plaintiff and Defendant SBC does not provide for reimbursement of Defendant SBC for failure to pay its contractors and laborers with claims related to the receivership property. Plaintiff contends any outstanding claims of contractors and suppliers at the time of the sale of a particular property could have been included in the closing statements for the sale of that property and deducted from the sale proceeds. Thus, Plaintiff contends that it did not

1

agree to assume Defendant SBC's debt obligations to third parties. Plaintiff also contends that equitable subrogation does not apply where the party seeking to be subrogated is the original debtor in the transaction and is paying off its own debts.

In essence, the undisputed facts are that Plaintiff made four loans to Defendant SBC and other borrowers for the acquisition, design, development and construction of residential projects in Sumner County, Tennessee. See Docket Entry No. 159, Plaintiff's Response to Defendant SBC's motion for summary judgment; see also Docket Entry No. 1, Complaint. These loans were evidenced by promissory notes in the original principal amount of forty million seven hundred ninety-seven thousand one hundred seventy-five dollars ninety cents ($40,797,175.90) with the collateral of "79 acres of commercial land, 219.25 acres of residential land, 522 developed but vacant lots, and 33 residential units under construction, of which four (4) are models, 23 are "spec" and only six (6) are under contract." Id.

Defendant SBC defaulted and the loans have matured, with an outstanding balance of twenty-nine million four hundred fifty-eight thousand four hundred eighty-eight dollars eighty-one cents ($29,458,488.81). Id. When the action was filed, Plaintiff moved to appoint a receiver, under the loan agreement, to preserve the value of the properties.

On March 12, 2012, the parties executed a Forbearance Agreement (Docket Entry No. 175) to resolve all the parties' disputes. (Docket Entry No. 161, Affidavit of Robert E. Unell at ¶ 4). Prior to this controversy, SBC hired contractors and suppliers to perform work on the properties. (Docket Entry No. 154, Affidavit of David J. Luckey at ¶ 5). At the time of the Forbearance Agreement, Defendant SBC still owed contractors and laborers payment for their services and the materials provided to the property. (Docket Entry No. 161, Affidavit of Robert E. Unell at ¶ 5). Plaintiff never

2

agreed to reimburse Defendant SBC for any payments made on the amounts listed in Exhibit J. Id. at ¶ 7.

According to the Forbearance Agreement, the proceeds from the sale of the property were to be applied under certain conditions as follows:

> Lender agrees if any part of the Property is sold during the Forbearance Period, to the extent invoices are owed to contractors and suppliers, then Lender will permit the amount owed and listed on Exhibit J to be included in the closing statement for the sale of such Property and debited from gross proceeds. At any closing, normal and customary evidence of such amounts owed to the contractors and suppliers may be required by Lender as a condition precedent to payment of such amounts at closing. In addition, at the option of the Lender, Borrower will deliver a certification to Lender confirming the identity of the contractors and suppliers, amounts owed, that the amounts owed were actually incurred in connection with the Property, and that such amounts remain outstanding.
>
> Nothing in this sub-section should be interpreted as reducing the Mandatory Release Price required by Section 6 herein.

(Docket Entry No. 175, Forbearance Agreement at ¶ 9(b)).

Before the properties sold, some contractors and suppliers demanded immediate payment for their services and supplies from Defendant SBC. (Docket Entry No. 154, Affidavit of David J. at ¶ 6). Defendant SBC paid some claims before the properties were sold. Id. Yet, because Defendant SBC had already paid these amounts directly to the contractors and suppliers, the claims were not included in the closing statements. (Docket Entry No. 161, Affidavit of Robert E. Unell at ¶ 8).

Under Tennessee law, the plain language of the contract controls absent ambiguity and "the court must determine the parties' intention from the four corners of contract, interpreting and enforcing it as written." Simonton v. Huff, 60 S.W.3d 820, 825 (Tenn. Ct. App. 2000). Tennessee law is "that the language of a contract signed by the parties was that of all the parties thereto and was purposely used by them as giving expression to their intentions." Associated Press v. WGNS, Inc.,

348 S.W.2d 507, 511 (Tenn. Ct. App. 1961). The Court's function is to enforce the parties' intentions "based on the usual, natural and ordinary meaning of the contractual language." City of Cookeville ex rel. Cookeville Reg'l Med. Ctr. v. Humphrey, 126 S.W.3d 897, 903 (Tenn. 2004).

Under the parties' Forbearance Agreement, Plaintiff agreed to pay claims listed on Exhibit J for work on a particular property that was outstanding at the time of that property's sale. Plaintiff agreed that the claims would be paid from the sale proceeds. Plaintiff did not agree to pay the contractors and suppliers directly for all expenses listed on Exhibit J, nor did Plaintiff agree that Defendant SBC could pay the contractors and then seek reimbursement from Plaintiff. Thus, Plaintiff agreed to deduct amounts due to Defendant SBC's contractors, but only if the invoices were still owed at the time of closing and were included in the closing statements.

Further, Plaintiff did not agree to pay Defendant SBC for the contractors' invoices as demanded. Defendant SBC did not present any evidence of these claims as outstanding at the time of closing. Thus, Plaintiff was not obligated to allow these amounts to be deducted from the sale proceeds, and Plaintiff has no obligation to reimburse Defendant SBC for the debts Defendant SBC incurred to these contractors and suppliers.

As to Defendant SBC's claim for subrogation, under that doctrine, subrogation is defined as "the substitution of another person in place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." Bankers Trust Co. v. Collins, 124 S.W.3d 576, 579 (Tenn. Ct. App. 2003). Equitable subrogation compels "the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay." Castleman Const. Co. v. Pennington, 432 S.W.2d 669, 673 (Tenn. 1968). Central to the doctrine of subrogation is the equitable principle that "substantial justice should be attained, regardless of form . . ." Bankers Trust

Co., 124 S.W.3d at 579 (citing Castleman Const. Co., 432 S.W.2d at 674). To award subrogation, the relief must be "an equitable" one. Castleman Const. Co., 432 S.W.2d at 673. Equitable subrogation "is not a universal remedy for persons who have lost their money." Associates Home Equity Servs., Inc. v. Franklin Nat'l Bank, M2000-00516-COA-R3CV, 2002 WL 459007, *4 (Tenn. Ct. App. Mar. 26, 2002). If a party establishes a right of subrogation, that party has the burden of demonstrating that the equities of the case entitle it to the remedy. Id.

> To entitle one to subrogation, his equity must be strong and his case clear, since it will not be enforced where the equities are equal, or the rights are not clear, or where it will prejudice the legal or equitable rights of others. Where equities are equal, there is no right to subrogation. However, subrogation will not be enforced against superior equities.

Bankers Trust Co., 124 S.W.3d at 579 (citing Castleman Const. Co., 432 S.W.2d at 675). Here, Defendant SBC incurred the relevant debts and benefitted from the work performed. Thus, equity requires that Defendant SBC be responsible for this debt.

Plaintiff also argues that "[t]he rationale to employ equitable subrogation is to prevent unjust enrichment," Bankers Trust Co., 124 S.W.3d at 580, and to award Defendant SBC relief would unjustly enrich Defendant SBC. See Charles Blalock & Sons, Inc. v. Fairtenn, LLC, E2011-02594-COA-R3CV, 2012 WL 6727426, *4 (Tenn. Ct. App. Dec. 27, 2012) (finding plaintiff would be prejudiced where opposing party received benefit of work for contracted price without work having been paid for). Plaintiff cites its losses at several million dollars on Defendant SBC's loans. Thus, Plaintiff contends that awarding relief would give Defendant SBC a windfall because SBC would be relieved from paying a debt for work that benefitted Defendant SBC, thereby increasing Plaintiff's deficiency.

5

Under Tennessee law, "[t]he doctrine of subrogation arises only in favor of one who pays the debt of another, and not in favor of one who pays the debt in performance of his own covenants." Merchants' Bank & Trust Co. v. Bushnell, 218 S.W. 709, 710 (Tenn. 1920).

> While . . . the doctrine of subrogation is steadily expanding in its practical administration so as to include cases where complete justice cannot be done without it, the doctrine cannot be extended beyond the settled principles upon which it rests. The right of subrogation is enforced upon the theory that the subrogee succeeds to the rights of the creditor. Subrogation cannot arise in favor of one who pays the debt in performance of his own covenant.

Cole v. Patty, 134 S.W.2d 160, 162 (Tenn. 1939).

Here, the Court concludes that Defendant SBC was primarily liable for the contractors' and suppliers' claims for services provided to Defendant SBC. Plaintiff did not owe these contractors and suppliers. Under equitable subrogation, Tennessee law requires that the "debt paid must be one for which subrogee was not primarily liable." In re Southwest Equipment Rental, Inc., 193 B.R. 276, 284 (E.D. Tenn. 1996). Defendant SBC is solely liable for these contractors' and suppliers' claims.

For the foregoing reasons, the Court concludes that Defendant SBC's motion for summary judgment should be denied.

An appropriate Order is filed herewith.

ENTERED this the 12th day of January, 2015.

WILLIAM J. HAYNES, JR.,
Senior United States District Judge